USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-20-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ALTON WALKER,

                      Plaintiff,

       -against-

CITY OF NEW YORK, POLICE COMMISSIONER
RAYMOND KELLY, CAPTAIN MIFSUD,
LT. JOHNSON, SGT. SHEA and CAPTAIN PATTI,

                    Defendants.
-----------------------------------------------------------x

10 Civ. 5939 (PKC)

MEMORANDUM
AND
ORDER

P. KEVIN CASTEL, District Judge:

        Plaintiff Alton Walker, an employee of the New York City Police Department ("NYPD"), brings this action against defendants in their individual and official capacities pursuant to multiple state and federal provisions, including Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 1981, 42 U.S.C. § 1983 and the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301, et seq. ("USERRA"). He alleges that defendants discriminated against him because he is black and because he is a member of the United States Marine Corp ("USMC") Reserves. Plaintiff also asserts retaliation and hostile work environment claims. Defendants move to dismiss plaintiff's claims pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Docket # 15.) For the reasons explained below, defendants' motion to dismiss is granted.

BACKGROUND

        The following facts, except as otherwise noted, are taken from the Complaint. For the purposes of this motion, all non-conclusory factual allegations of the non-movant are accepted as true,

Iqbal v. Ashcroft, 129 S. Ct. 1937, 1949-50 (2009), and all reasonable inferences are drawn in favor of the non-movant. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

In 1988, plaintiff joined the USMC and later, in 2004, became a member of the USMC Reserves. (Compl. ¶ 26.) The NYPD hired plaintiff, a black male, in approximately 1997. (Compl. ¶¶ 27, 67.) In 2006, plaintiff began working at the 83rd Precinct. (Compl. ¶ 30.) On several occasions, the USMC Reserves deployed plaintiff to various locations, which required plaintiff to take multiple leaves of absence. (Compl. ¶ 28.)

The Complaint describes interactions between plaintiff and the individual defendants, who are all white, which form the basis of his discrimination claims. (Compl. ¶¶ 13, 18-21.) On one occasion, after plaintiff returned from a USMC drill, Captain Mifsud, plaintiff's Executive Officer at the 83rd Precinct, "interrogated" plaintiff regarding the frequency of his deployments and his orders to attend USMC military drills and told him that "when you go to drill it affects the command." (Compl. ¶¶ 31, 33.) In general, Captain Mifsud was not "supportive" of the scheduling demands arising from plaintiff's USMC obligations. (Compl. ¶ 33.)

Defendants also "repeatedly criticized [plaintiff] for his military obligations." (Compl. ¶ 32.) During plaintiff's 2009 annual evaluation, Lt. Sung attributed the underachievement of plaintiff's squad to plaintiff's military leave. (Compl. ¶ 47.) "On occasion" plaintiff has "repeatedly heard statements referencing milk containers and his being one of the 'missing people' [in order] to equate [p]laintiff as being one of the 'missing people' because he has been deployed by the USMC for a few weeks to report to military drills." (Compl. ¶ 34.) After plaintiff returned from a USMC duty related leave of absence, Lt. Johnson

2

told plaintiff that while plaintiff was away, Lt. Johnson "had to perform evaluations which Shea 'screwed up . . . .'" (Compl. ¶ 35.)

"As a result of [Captain] Mifsud's failure to accept [p]laintiff's . . . USMC military duties and obligations, on January 7, 2010, while [p]laintiff was on desk duty, he learned that he was being transferred to the 90th Precinct." (Compl. ¶ 38.) Four other Sergeants were also transferred to the 90th Precinct's IRT Unit.[1] (Compl. ¶ 40.) According to plaintiff, the "90th Precinct is a 'Rookie Unit,' dedicated to the 'Impact Zone' policing" that patrols one of the highest crime areas of New York City. (Compl. ¶ 44.) As a member of the 90th Precinct, plaintiff's "tour" changed from the 2:50 p.m. to 11:47 p.m. tour to the 6:00 p.m. to 2:00 a.m. tour. (Compl. ¶ 42.) Because of this "[p]laintiff was no longer able to drive his children to school [and] . . . suffered severe emotional stress, anxiety and loss of sleep . . . ." (Compl. ¶ 43.) The stress and anxiety arising from the change in shift time caused "[p]laintiff . . . to go to the emergency room at Beth Israel Medical Center on January 22, 2010 due to chest pains [and] shortness of breath . . . . " (Compl. ¶ 43.) The transfer and "harassment" also caused plaintiff to have "concerns with his career mobility" and it "alter[ed] the permanent and future conditions of [p]laintiff's employment." (Compl. ¶¶ 115, 117.)

After plaintiff was transferred to the 90th Precinct, Captain Patti told plaintiff "that the criteria used to determine who was to be transferred to his unit ([the] IRT [U]nit) was Sergeants who had one year in rank." (Compl. ¶ 39.) Plaintiff later learned that he was the only Sergeant with over four years in rank who was assigned to the 90th Precinct's IRT Unit and that the four other Sergeants transferred had approximately two years or less in rank and less seniority than plaintiff. (Compl. ¶ 40.) At the time of plaintiff's transfer, "[t]here were

---

[1] Plaintiff does not define the acronym "IRT." Based on the other facts alleged in the Complaint, it appears to stand for "Instant Response Team."

3

approximately twenty sergeants . . . assigned to the 83rd Precinct, many of whom had less time as a sergeant than [p]laintiff." (Compl. ¶ 41.) "None of the[ ] other [twenty] plus Sergeants were current, active military [members] . . . and therefore, did not have to take time off to satisfy their military obligations." (Compl. ¶ 41.)

On January 26, 2010, plaintiff filed a complaint with the NYPD's Office of Equal Employment Opportunity ("OEEO") "regarding the unlawful transfer due to [p]laintiff's military commitments and/or race, color and in retaliation for protected[ ] EEO activity." (Compl. ¶ 45.) Approximately two weeks later, Lt. Sung "threatened [plaintiff] with a 'sit down' in retaliation for the OEEO filing." (Compl. ¶ 48.) In July 2010, plaintiff "was again subjected to a punitive transfer" to the 77th Precinct. (Compl. ¶¶ 49, 68.) On August 4, 2010, plaintiff filed a complaint against the NYPD with the Veterans' Employment and Training Service of the United States Department of Labor ("DOL"). (Compl. ¶¶ 52, 122.) Two days after he filed a complaint with the DOL, plaintiff filed the Complaint in this action. (Docket # 1.) Plaintiff was also "a member of a successful federal suit" against the City of New York, "which resulted in a multimillion dollar verdict" that the Second Circuit sustained in 2003. (Compl. ¶ 45 n.1.)

DISCUSSION

The Complaint asserts multiple claims alleging that defendants discriminated against him on the basis of his race and his status as a member of the USMC Reserves. On November 19, 2010, plaintiff withdrew 1) his USERRA claims against the individual defendants, 2) his Title VII race discrimination claims, and 3) his Title VII claims against the individually named defendants. (Docket # 14.) Plaintiff's remaining Title VII claims allege that the City of New York discriminated against him on the basis of his military status, retaliated against him after he filed complaints alleging discrimination, and created a hostile work environment.

4

Plaintiff did not waive his USERRA claim against the City of New York. (Docket # 14.)

Plaintiff also asserts a section 1981 claim, as well as a section 1983 claim alleging that defendants deprived him of rights afforded him under the Due Process and Equal Protection Clauses of the Constitution. He also alleges that defendants' conduct deprived him of rights afforded him under the New York State Constitution, New York State Executive Law § 296 and New York Civil Practice Law and Rules § 1602. Defendants move to dismiss the Complaint in its entirety, arguing that plaintiff has failed to plausibly allege any actionable claim. (Defs. Mem. at 2, 9-10, 16.)

I. Motion To Dismiss Standard

Rule 8(a)(2), Fed. R. Civ. P., requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (ellipsis in original). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide the grounds upon which the claims rest, through factual allegations sufficient to raise a right to relief above the speculative level. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 127 S. Ct. at 1965). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Achcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1949-50. The Supreme Court has described the motion to dismiss standard as encompassing a "two-pronged approach" that requires a

court first to construe a complaint's allegations as true, while not bound to accept the veracity of a legal conclusion couched as a factual allegation. Id. Second, a court must then consider whether the complaint "states a plausible claim for relief," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Although the Court is limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment. See Int'l Audiotext Network, Inc. v. AT&T, 62 F.3d 69, 72 (2d Cir. 1995).

II. Plaintiff's USERRA Claims Are Dismissed

Plaintiff asserts that defendants violated the USERRA "by discriminating against [him] by failing to permit him to take military leave time based on his military obligations" and by transferring him, on two separate occasions, to another precinct. (Compl. ¶¶ 38, 68, 123.) Defendants move to dismiss the remaining USERRA claims against the City of New York on the grounds that plaintiff has failed to satisfy the statutory requirements set forth in 38 U.S.C. § 4323(a)(3) for commencing an action under the USERRA. (Defs. Mem. at 7-8.)

The "USERRA provides a comprehensive remedial scheme to ensure the employment and reemployment rights of those called upon to serve in the armed forces of the United States." Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist., 423 F.3d 153, 160 (2d Cir. 2005). Section 4311, USERRA's antidiscrimination provision, forbids an employer to deny "employment, reemployment, retention in employment, promotion, or any benefit of employment" based on a person's membership in or "obligation to perform service in a uniformed service . . . ." 38 U.S.C. § 4311(a). The Act provides that liability is established "if the person's membership . . . is a motivating factor in the employer's action." 38 U.S.C. § 4311(c); see also Staub v. Proctor Hosp., 131 S. Ct. 1186, 1190-91 (2011).

6

The USERRA confers federal jurisdiction over USERRA claims asserted "by a person" "against a private employer." 38 U.S.C. § 4323(b)(3). For the purposes of section 4323, a "private employer" includes a subdivision of a state. 38 U.S.C. § 4323(i); <u>Sandoval v. City of Chicago, Illinois</u>, 560 F.3d 703, 704 (7th Cir. 2009) (concluding that the City of Chicago, as a "political subdivision" of Illinois was a "private employer").

"To enforce its provisions, USERRA authorizes private suits for damages or injunctive relief against [an] employer . . . ." <u>Townsend v. Univer. of Alaska</u>, 543 F.3d 478, 482 (9th Cir. 2008). A person may commence an action against a State (as an employer) or a private employer under the USERRA provided the person satisfies one of the requirements set forth in 38 U.S.C. § 4323(a)(3).[2] The USERRA provides, in relevant part:

> **(a) Action for relief.--(1)** A person who receives from the Secretary a notification pursuant to section 4322(e) of this title of an unsuccessful effort to resolve a complaint relating to a State (as an employer) or a private employer may request that the Secretary refer the complaint to the Attorney General. Not later than 60 days after the Secretary receives such a request with respect to a complaint, the Secretary shall refer the complaint to the Attorney General. If the Attorney General is reasonably satisfied that the person on whose behalf the complaint is referred is entitled to the rights or benefits sought, the Attorney General may appear on behalf of, and act as attorney for, the person on whose behalf the complaint is submitted and commence an action for relief under this chapter for such person. In the case of such an action against a State (as an employer), the action shall be brought in the name of the United States as the plaintiff in the action.
>
> **(2)** Not later than 60 days after the date the Attorney General receives a referral under paragraph (1), the Attorney General shall--
>
> > **(A)** make a decision whether to appear on behalf of, and act as attorney for, the person on whose behalf the complaint is submitted; and
> >
> > **(B)** notify such person in writing of such decision.
>
> **(3)** A person may commence an action for relief with respect to a complaint against a State (as an employer) or a private employer if the person—

---

[2] Before the statute was amended in 2008, 38 U.S.C. § 4323(a)(3) appeared as 38 U.S.C. § 4323(a)(2).

> **(A)** has chosen not to apply to the Secretary for assistance under section 4322(a) of this title;
>
> **(B)** has chosen not to request that the Secretary refer the complaint to the Attorney General under paragraph (1); or
>
> **(C)** has been refused representation by the Attorney General with respect to the complaint under such paragraph.

38 U.S.C. § 4323(a).

Thus, "[a] person may commence an action for relief" if the person 1) "has chosen not to apply to the Secretary for assistance under section 4322(a)," 2) "has chosen not to request that the Secretary refer the complaint to the Attorney General under" section 4323(a)(1) or 3) "has been refused representation by the Attorney General" under section 4323(a)(1). 38 U.S.C. § 4323(a)(3)(A)-(C); see also Garrett v. Circuit City Stores, Inc., 449 F.3d 672, 676 (5th Cir. 2006) (internal citation omitted) (explaining that under the USERRA, "[a] person may file a complaint with the Secretary of Labor (who will investigate and attempt to resolve the complaint) and request that the Secretary refer the matter to the Attorney General for further prosecution . . . " or may "[a]lternatively . . . pursue a civil action in federal court, forgoing all agency participation."). If a person chooses to commence an action for relief with the Secretary, he must await notification as to the Secretary's effort in resolving the complaint before commencing an action for relief under section 4323. 38 U.S.C. § 4323(a)(3)(B)-(C).

Here, plaintiff alleges that he filed a complaint against the NYPD with the Veterans' Employment and Training Service of the DOL "in accordance with [s]ection 4322(a)(1) . . . ." (Compl. ¶ 52.) Because he applied to the Secretary for assistance under section 4322(a)(1), he cannot satisfy section 4323(a)(3)(A), which requires that the person has chosen not to apply under section 4322(a). See 38 U.S.C. § 4322(a)(3)(A). Plaintiff does not

8

allege that he "has been refused representation by the Attorney General with respect to the complaint" filed or that he has been informed that the Secretary was unsuccessful in its effort to resolve the complaint. He has therefore not alleged compliance with subsection 4323(a)(3)(B) or 4323(a)(3)(C). See 38 U.S.C. § 4323(a)(3); 38 U.S.C. § 4322(e) (providing that "[i]f the efforts of the Secretary" "do not resolve the complaint, the Secretary shall notify the person who submitted the complaint of the results of the Secretary's investigation . . . . and the complainant's entitlement to proceed under the enforcement of rights provisions provided under section 4323 . . . ."). Thus, based on the face of the Complaint, plaintiff has not alleged facts to satisfy one of the three grounds required under section 4323(a)(3) to commence an action for relief against an employer. See Palmatier v. Michigan Dept. of State Police, 1996 WL 925856, at *6-7 (W.D.Mich. Aug. 13, 1996) ("Section 4323(a)([3])(A) clearly provides that a person may commence their own action if they have chosen not to apply to the Secretary for assistance regarding the complaint under § 4322(c).").

    Plaintiff argues that he "chose not to pursue . . . administrative procedures" and therefore "effectively withdr[ew] his [DOL] complaint." (Pl. Mem. in Opp. at 5.) It is not clear what plaintiff means by his statement that he chose "not to pursue" administrative procedures. He chose to file a complaint with the DOL and then, two days later, filed the Complaint in this action. There is no allegation that he took any affirmative step to withdraw his DOL complaint. Moreover, he asserts that he chose not to pursue the DOL complaint in his memorandum of law and not in the Complaint, and the Court need not consider it on a motion to dismiss. See Int'l Audiotext Network, Inc., 62 F.3d at 72 (explaining that on a motion to dismiss, the court is typically limited to facts as stated in the complaint); Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co., 475 F. Supp. 2d 400, 405 (S.D.N.Y. 2007) ("It is . . . error to consider affidavits and exhibits

9

submitted by defendants, or rely on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss.") (internal quotation marks, bracketing, and citations omitted). Accordingly, plaintiff's claims asserted under the USERRA are dismissed for failure to allege any of the grounds for commencing an action for relief set forth in 38 U.S.C. § 4323(a)(3). Cf. Becker v. Merit Sys. Prot. Bd., 318 F. App'x 907, 908 (Fed. Cir. 2009) (non-precedential summary order) (per curiam) (affirming the Merit Systems Protection Board's decision that it lacked jurisdiction to hear plaintiff's case because plaintiff had "not complied with the procedures set forth in 38 U.S.C. §§ 4324(b), 4322(a), and 4322(e)"; plaintiff had applied to the Secretary for assistance but did not receive "notification from the Secretary that the department was unable to resolve the complaint, the results of the department's investigation, and the person's entitlement to proceed to the board."); McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003) (explaining, in a claim asserted under the Prisoner Litigation Reform Act, that "[i]f nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted."). Compare 38 U.S.C. § 4323(a)(3) (setting forth when a person may commence an action for relief with respect to a complaint against a State or a private employer), with 38 U.S.C. § 4324(b) (setting forth when a person may submit a complaint against a Federal executive agency or the Office of Personnel Management directly to the Merit Systems Protection Board).

### III. McDonnell-Douglas Burden Shifting Analysis

Employment-discrimination claims asserted under section 1983, section 1981 and/or Title VII are appropriately analyzed under the McDonnell-Douglas v. Green, 411 U.S. 792 (1973), burden-shifting analysis. See Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (applying McDonnell-Douglas framework to discrimination claims asserted under

Title VII, section 1981 and section 1983); Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008) (applying McDonnell-Douglas analysis to Title VII claims). Under the McDonnell-Douglas framework, a plaintiff has the initial burden of establishing a prima facie case of discrimination. Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003). If a plaintiff is able to establish a prima facie case of discrimination, the defendant then has the burden of producing evidence of a legitimate, nondiscriminatory reason for the adverse employment action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). If the defendant meets this burden, the plaintiff must come forward with evidence from which a reasonable jury could conclude that the purported nondiscriminatory basis for the adverse action is pretextual. Id. Retaliation claims are analyzed under a similar burden shifting analysis. See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010).

### IV. Plaintiff's Title VII Discrimination, Retaliation and Hostile Work Environment Claims Are Dismissed

Title VII claims for discrimination, retaliation, and hostile work environment each have a different set of elements. To establish a prima facie case of race discrimination, a claimant must demonstrate that (1) he belongs to a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. See e.g. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). A prima facie retaliation case requires a showing that (1) the employee engaged in protected activity under Title VII, (2) the employer was aware of this activity, (3) the employer took adverse action against the employee, and (4) a causal connection between the protected activity and the adverse action. Hicks, 593 F.3d at 164. Finally, a prima facie hostile work environment claim requires a plaintiff to demonstrate "(1) that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions

11

of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996) (alterations in original)). While a plaintiff bringing a discrimination claim need not establish a prima facie case to survive a motion to dismiss, a plaintiff must nevertheless plead allegations sufficient to make a claim "plausible on its face." See Twombly, 550 U.S. at 570; Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 218 (S.D.N.Y. 2010).

"Though they have distinct elements, discrimination, retaliation, and hostile work environment claims share certain prerequisites." Clemente v. New York State Div. of Parole, 684 F. Supp. 2d 366, 373 (S.D.N.Y. 2010). "Most importantly, each requires a showing that the employer's allegedly wrongful conduct derived from a specifically prohibited factor—namely, 'race, color, religion, sex, or national origin.' " Id. (quoting 42 U.S.C. § 2000e-2(a)(1)). Claims for discrimination and hostile work environment are actionable if the facts support an inference that the employer's conduct was based on one of these factors. Id.; Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (noting that a plaintiff must be a member of a protected category to state a prima facie case under Title VII); Pearson v. Board of Education, 499 F. Supp. 2d 575, 592 (S.D.N.Y. 2007) (explaining in the context of a hostile work environment claim that "[a]busive conduct in the workplace, if not based on a protected class, is not actionable under Title VII."); Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities, 115 F.3d 116, 119 (2d Cir. 1997) (explaining that the "ultimate issue" in an employment discrimination case is whether the alleged adverse action was motivated at least in part by an impermissible discriminatory reason). Employer discrimination and hostility based on other non-enumerated classes, including military status, will not support a

claim under Title VII. See Gourdine v. Cabrini Medical Ctr., 307 F. Supp. 2d 587, 598 (S.D.N.Y. 2004), aff'd in part and vac'd in part and remanded on other grounds, 128 F. App'x 780 (2d Cir. 2005) ("Title VII does not include military status as a basis for unlawful discrimination."); Ercole v. LaHood, 2011 WL 1205137, at *10 (E.D.N.Y. Mar. 29, 2011) ("military reservist status is not a protected class under . . . Title VII . . . so . . . plaintiff's discrimination claims based on military reservist status are not viable"); Ercole v. U.S. Dep't. of Transp., 2008 WL 4190799, at *6 (E.D.N.Y. Sep. 10, 2008) ("plaintiff's status as a naval reservist is not a protected class under Title VII"). Similarly, the "protected activity" that forms the basis for a retaliation claim must relate to a class protected under Title VII. See McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001) ("The plaintiff is . . . required to have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII."); Gourdine, 307 F. Supp. 2d at 598 ("[I]n order for an employee's complaints to be a 'protected activity,' they must relate to alleged violation of Title VII, i.e., the complaints must relate to race or gender.").

### A. Plaintiff's Title VII Discrimination Claims Are Dismissed

Plaintiff alleges that defendants discriminated against him when they transferred him to another precinct, attributed the underperformance of his police unit to his USMC-related absences, and criticized him for his military obligations. These claims are dismissed. Plaintiff has failed to allege facts to support an inference that the discriminatory conduct was based on plaintiff's race or the color of his skin. Rather, the facts alleged relate to plaintiff's status as a member in the USMC Reserves, which is not a protected class under Title VII. See 42 U.S.C. § 2000e-2(a)(1) (prohibiting employers from "against any individual . . . because of such

individual's race, color, religion, sex, or national origin."); Gourdine, 307 F. Supp. 2d at 598; LaHood, 2011 WL 1205137, at *10; U.S. Dept. of Transp., 2008 WL 4190799, at *6.

Plaintiff makes only conclusory allegations of race discrimination. Plaintiff does not allege facts related to race or skin color other than the fact that plaintiff is black and the individual defendants are white. That alone is not sufficient to give rise to an inference of race discrimination. See Weinstock, 224 F.3d at 42 (noting that the alleged adverse employment action must occur under circumstances giving rise to an inference of discrimination). Thus, to the extent plaintiff has not already withdrawn his Title VII discrimination claims, these claims are dismissed.

### B. Plaintiff's Hostile Work Environment Claims Are Dismissed

Plaintiff's hostile work environment claims are also dismissed because plaintiff does not allege facts to support a claim that the precinct environment was hostile because of his membership in a protected class. The facts alleged relate to plaintiff's military status, not his race. Accordingly, these claims are dismissed. See Ortega v. N.Y.C. Off-Track Betting Corp., 1999 WL 342353, at *4 (S.D.N.Y. May 27, 1999) (dismissing hostile work environment claim where the facts alleged failed to support a claim that defendant's actions "created an atmosphere that was abusive or hostile because of plaintiff's race, ethnicity or sex—i.e., that the alleged hostile environment was created by race-related, ethnicity-related, or sex-related conduct on the part of defendant").

### C. Plaintiff's Title VII Retaliation Claims Are Dismissed

Plaintiff's retaliation claims are also dismissed because he fails to allege facts to support a claim that he engaged in a protected activity that was causally connected to an adverse action. The Complaint alleges that defendants retaliated against him after he 1) filed a complaint

with the OEEO on January 26, 2010, 2) filed a Charge of Discrimination with the EEOC on March 31, 2010 and 3) brought a federal lawsuit against the City of New York "which resulted in a multimillion dollar verdict." (Compl. ¶¶ 8, 45, 45 n.1.)

Filing complaints with the OEEO and the EEOC relating to plaintiff's involvement in the USMC Reserves are not protected activities within the meaning of Title VII because military members are not a protected class under Title VII. In the Charge of Discrimination filed with the EEOC, plaintiff listed only his "military service" as the basis for the alleged discrimination.[3] (Ex. B at 1-4, attached to Gomez-Sanchez Decl.) Similarly, in plaintiff's OEEO Case Report, plaintiff's military status is the only listed basis for the discrimination. (Ex. A at 1-2, attached to Gomez-Sanchez Decl.) Because the allegations of discrimination in the complaints related to plaintiff's status as a military reservist, plaintiff has failed to allege that he engaged in a "protected activity" by filing these complaints.

Although the filing of a federal lawsuit relating to race discrimination could be a protected activity within the meaning of Title VII, plaintiff has failed to allege how his involvement in the federal lawsuit was causally related to his precinct transfer or any adverse action. See DeCintio v. Westchester Cnty. Medical Ctr., 821 F.2d 111, 115 (2d Cir. 1987). (noting that a causal connection is required). A causal connection can be established indirectly from circumstantial evidence of a close temporal proximity between the protected activity and the discriminatory treatment, "through . . . evidence of disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus . . . ." Id.

Here, the Complaint alleges that the Second Circuit sustained the jury's verdict arising from the federal lawsuit in which plaintiff was a participant in 2003. (Compl. ¶ 45 n.1.)

---

[3] The Court may properly consider the contents of the EEOC Charge of Discrimination and the OEEO Case Report without converting defendants' motion to one for summary judgment because the Complaint incorporates these documents by reference. See Int'l Audiotext Network, Inc., 62 F.3d at 72.

15

It also lists the name of the case and two docket numbers, which indicate that the case was a consolidated case consisting of two cases filed in 1997 and 1998. (Compl. ¶ 45 n.1.) There is, at least, a six year time gap between the time when the Second Circuit sustained the verdict and when the allegedly retaliatory conduct occurred. This long time gap is insufficient to allege a temporal proximity between the protected activity and the alleged discrimination and/or retaliatory conduct. See Clark Cnty. Sch. Dist. V. Breeden, 532 U.S. 268, 273 (2001) (noting that temporal proximity must be "very close" and stating that action taken twenty months after the protected action "suggests, by itself, no causality at all"). Plaintiff does not allege any other facts to indicate that defendants' actions were related to the federal lawsuit or that other participants in the federal lawsuit were treated disparately. Accordingly, plaintiff's Title VII retaliation claims are dismissed.

V. Plaintiff's Section 1981 Claims Are Dismissed

Plaintiff's section 1981 claims are dismissed for substantially the same reasons as his Title VII claims. In order to state a claim of discrimination under section 1981, a plaintiff must plausibly allege that defendants intended to discriminate on the basis of race. See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam) (listing "an intent to discriminate on the basis of race by the defendant" as an element of a section 1981 claim). As explained above, plaintiff has failed to allege facts that support a claim that defendants intended to discriminate against him on the basis of his race. Plaintiff alleges that he is a different race than the defendants, but this alone is insufficient to allege racially motivated discrimination under section 1981. See Johnson v. City of New York, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) (citing Yusuf v. Vassar Coll., 35 F.3d 709, 714 (2d Cir. 1994)). Thus, plaintiff's section 1981 claims are also dismissed.

VI. <u>Plaintiff's Section 1983 Claims Are Dismissed</u>

To state a claim under section 1983, a plaintiff must allege that (1) "the conduct complained of [was] . . . committed by a person acting under color of state law," and (2) the "conduct . . . deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." <u>Rand v. Perales</u>, 737 F.2d 257, 260 (2d Cir. 1984) (citing <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981)); <u>see also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 150 (1970). The federal rights that plaintiff seeks to enforce under section 1983 are primarily his rights to equal protection and due process as secured by the Fourteenth Amendment to the Constitution. (Compl. ¶ 61.)

A. Equal Protection

The analytical framework of a workplace equal protection claims parallels that of a discrimination claim under Title VII. <u>See</u> <u>Feingold</u>, 366 F.3d at 159. "The elements of one are generally the same as the elements of the other and the two must stand or fall together." <u>Id.</u> Thus, I conclude that plaintiff's equal protection claim must also fail for substantially the same reasons his Title VII discrimination claims fail.

B. Due Process

To prevail on a claim of a due process violation, a plaintiff must show (1) he "possessed a protected liberty or property interest" and (2) "that he was deprived of that interest without due process." <u>McMenemy</u>, 241 F.3d at 285–86. Property interests protected by the Constitution "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 577 (1972); <u>see also</u> <u>Harrington v. Cnty. of Suffolk</u>, 607 F.3d 31,

17

34 (2d Cir. 2010). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . . He must, instead, have a legitimate claim of entitlement to it." Ezekwo v. New York City Health & Hosps. Corp., 940 F.2d 775, 787 (2d Cir. 1991) (quoting Roth, 408 U.S. at 577)).

Here, plaintiff does not allege facts to support a claim that he was deprived of a protected property or liberty interest. He has not identified any contract, agreement or state law that created an entitlement that he remain in the same precinct or work certain hours. Nor does he allege what, if any, process he was due before the decision to transfer him was made. Thus, he has failed to allege facts to support a due process violation claim. Accordingly, these claims are dismissed. See Parrett v. City of Connersville, Ind., 737 F.2d 690, 693 (7th Cir. 1984) ("we [have] expressed doubt whether a lateral transfer, involving no loss of pay, could ever be sufficient deprivation to violate the Fourteenth Amendment.").

VII. Plaintiff's State Law Claims Are Dismissed

This Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Section 1367 of title 28 of the United States Code governs the exercise of supplemental jurisdiction and states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Section 1367(c)(3) states that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." Although section 1367(c)(3) is couched in

18

permissive terms, the Second Circuit has made clear that the Court's discretion "is not boundless." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity – the 'Cohill factors.'" Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006) (citing Carneigie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. at 350 n.7. Here, plaintiff's federal claims have been dismissed and none of the Cohill factors supports the exercise of supplemental jurisdiction over plaintiff's remaining claims. I therefore decline to exercise supplemental jurisdiction over plaintiff's proposed state-law claims and dismiss them without prejudice.

CONCLUSION

For the reasons explained above, defendants' motion to dismiss is granted. (Docket # 15.)

SO ORDERED.

_[signature]_
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 20, 2011